1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF WASHINGTON

9

10   DANA D. SANCHEZ,                    )
                                        ) No. CV-05-0242-MWL
11            Plaintiff,                 )
                                        ) ORDER GRANTING DEFENDANT'S
12   v.                                 ) MOTION FOR SUMMARY JUDGMENT
                                        )
13   JO ANNE B. BARNHART,                )
     Commissioner of Social             )
14   Security,                          )
                                        )
15            Defendant.                 )
                                        )
16   ─────────────────────────────────

17      BEFORE THE COURT are cross-motions for summary judgment,

18   noted for hearing without oral argument on April 17, 2006.  (Ct.

19   Rec. 16, 19).  Plaintiff Dana D. Sanchez ("Plaintiff") filed a

20   reply brief on March 17, 2006.  (Ct. Rec. 21).  Attorney Maureen

21   Rosette represents Plaintiff; Special Assistant United States

22   Attorney Jeffrey H. Baird represents the Commissioner of Social

23   Security ("Commissioner").  The parties have consented to proceed

24   before a magistrate judge.  (Ct. Rec. 7).  After reviewing the

25   administrative record and the briefs filed by the parties, the

26   Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 19)

27   and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 16).

28   ///

1                              **JURISDICTION**

2          On February 24, 1997, Plaintiff protectively applied for

3     Supplemental Security Income ("SSI") benefits alleging disability

4     since December 31, 1985, due to brittle diabetes mellitus.

5     (Administrative Record ("AR") 85-86, 91, 274-275).[1]  On January

6     13, 2004, Plaintiff appeared before Administrative Law Judge

7     ("ALJ") Mary B. Reed, at which time testimony was taken from

8     Plaintiff and vocational expert K. Diane Kramer.  (AR 506-573).

9     On March 25, 2005, the ALJ issued a decision finding that

10    Plaintiff was not disabled.  (AR 274-287).  The Appeals Council

11    denied a request for review on June 25, 2005.  (AR 266-268).

12    Therefore, the ALJ's decision became the final decision of the

13    Commissioner, which is appealable to the district court pursuant

14    to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial

15    review pursuant to 42 U.S.C. § 405(g) on August 15, 2005.  (Ct.

16    Rec. 1).

17         As noted by the ALJ, by way of an October 13, 2004 letter,

18    Plaintiff requests a closed period of disability, from July 27,

19    1994, through September 12, 1998.  (AR 275, 312).  Plaintiff

20    indicates that her disability ended on September 12, 1998, because

21    she had returned to full-time employment.  (AR 275).

22                           **STATEMENT OF FACTS**

23         The facts have been presented in the administrative hearing

24    transcript, the ALJ's decision, the briefs of both Plaintiff and

25    the Commissioner and will only be summarized here.  Plaintiff was

26    31 years old on the date of the ALJ's decision, has a high school

27    _____

28         [1]An ALJ issued a decision denying her claim for SSI on April 30, 1999.
          (AR 14-20).  However, this Court issued an order on October 17, 2002,
          remanding the case for additional proceedings.  (AR 294-295).

education and completed a nine-month course at Interface Computer School in 1998. (AR 515-517). Plaintiff has past relevant work as a telemarketer, a restaurant hostess, an agricultural sorter, and a pharmacy B tech. (AR 517-521).

At the administrative hearing held on January 13, 2004, Plaintiff testified that she suffered from the symptoms of her diabetes during the relevant time period (July of 1994 to September of 1998). (AR 523). She stated that her blood sugar fluctuated from one extreme to the other, anywhere from 40 to 400. (AR 523). High blood sugar caused her to be irritable and resulted in the need to frequently use the restroom. (AR 524). Extremely low blood sugar would result in her passing out. (AR 529). She experienced fatigue and would take a couple of one hour to one and one-half hour naps per day, every day. (AR 526). Plaintiff indicated that her energy level was low and she would only do housework in 20 to 30 minute increments with rest periods in between. (AR 526-527).

Plaintiff testified that, during the relevant period, she stopped driving because she experienced blurred vision when her blood sugar was low which caused her to hit curbs with the car. (AR 531). She stated that her thought process and memory was better during the relevant time period than it is now, but that she still had a hard time concentrating during that period of time. (AR 532-533). During that same time period, Plaintiff did not report problems with anxiety or depression, nor did she see any mental health professionals. (AR 534).

Plaintiff indicated that she could only walk a couple of blocks and stand for 20 to 30 minutes at a time, but could sit without difficulty. (AR 535). She indicated that, with regard to

- 3 -

postural limitations, she could bend at the waist, but the pain in her knees prevented her from kneeling.  (AR 535-536).  She stated that she could, however, climb stairs during that period of time. (AR 536).

Plaintiff testified that she also had growths under her arms which had affected her daily activities.  (AR 538).  However, she stated that when the growths were surgically removed her activities were not affected, and she eventually outgrew the problems with the growths.  (AR 538-539).  In any event, she was able to maintain work as a bookkeeper, outside of the relevant time period, even though she was experiencing the underarm growth problem.  (AR 539, 541).

Plaintiff indicated that she could not have performed full-time work during the relevant time period because "[i]t was too much."  (AR 542).  When the ALJ questioned her as to what changed to allow her to return to work in September of 1998, she responded that she and her husband were broke and her husband threatened to leave her if she did not find work.  (AR 542).  She then attended computer school/training on her own accord and obtained work thereafter.  (AR 542).  She attended school from 10:00 a.m. until 4:00 p.m. and completed 15 to 20 hours of lab time as well.  (AR 549).  Plaintiff reported that her attendance was good and her grades were A's and B's.  (AR 550).

At the administrative hearing, the ALJ questioned Plaintiff about forms filled out for Dr. Hartman that indicated Plaintiff did not have any severe insulin reactions, changes in vision, shortness of breath, sores on her feet or numbness.  (AR 552-553, 556).  Plaintiff testified that she would respond with a "no" to these questions so that she would not jeopardize losing her

- 4 -

1  driver's license or having her license suspended.  (AR 553, 556).

2  She stated it was important for her to keep her driver's license

3  so that she would be able to transport her kids to and from

4  school.[2]  (AR 556).

5      Vocational expert K. Diane Kramer testified on January 13,

6  2004 (AR 558-570), and medical expert Arthur D. Craig testified at

7  the administrative hearing held on March 9, 1999 (AR 29-35).

8                    **SEQUENTIAL EVALUATION PROCESS**

9      The Social Security Act (the "Act") defines "disability" as

10  the "inability to engage in any substantial gainful activity by

11  reason of any medically determinable physical or mental impairment

12  which can be expected to result in death or which has lasted or

13  can be expected to last for a continuous period of not less than

14  twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

15  Act also provides that a Plaintiff shall be determined to be under

16  a disability only if his impairments are of such severity that

17  Plaintiff is not only unable to do his previous work but cannot,

18  considering Plaintiff's age, education and work experiences,

19  engage in any other substantial gainful work which exists in the

20  national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

21  Thus, the definition of disability consists of both medical and

22  vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

23  (9th Cir. 2001).

24      The Commissioner has established a five-step sequential

25  evaluation process for determining whether a person is disabled.

26  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is

27

28
        [2]Plaintiff testified that "I know that's wrong to lie to your doctor,
    but I didn't want to have more chaos of, you know, how are we going to get
    the kids here when I'm at work . . . ."  (AR 556).

engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is

///

met once Plaintiff establishes that a physical or mental
impairment prevents him from engaging in his previous occupation.
The burden then shifts to the Commissioner to show (1) that
Plaintiff can perform other substantial gainful activity and (2)
that a "significant number of jobs exist in the national economy"
which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498
(9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a
Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999).  "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988).  Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted).  "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the court considers the record as a whole, not just the

evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff did not engage in substantial gainful activity during her alleged closed period of disability. (AR 276). However, the ALJ did note that, following Plaintiff's closed period, she performed work at substantial gainful activity levels as a receptionist (semiskilled, sedentary work). (AR 276).

At step two, the ALJ determined that Plaintiff has the severe impairments of diabetes mellitus, obesity and chondromalacia of the left knee, but that she does not have an impairment or combination of impairments listed in or medically equal to one of

the Listings impairments.  (AR 279, 285).  It was noted that the record did not reveal the presence of any medically determinable mental impairment during the time period at issue.  (AR 279, 282).

The ALJ concluded that, during the relevant period, Plaintiff retained the residual functional capacity ("RFC") to preform a limited range of light exertion work or that she had the ability to occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk about six hours in an eight-hour work day, sit (with normal breaks) for a total of about six hours in an eight-hour work day, occasionally squat, kneel and climb stairs, never climb ladders ropes or scaffolds, should avoid hazardous machinery, needs regular work hours and requires regular meal breaks.  (AR 282-283).

At step four of the sequential evaluation process, the ALJ found that Plaintiff was not able to perform her past relevant work as an agricultural sorter.  (AR 283).  However, the ALJ determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her limitations.  (AR 284-285).  Examples of such jobs included work as a routing clerk, a housekeeping/cleaner, a laboratory sample carrier, a type copy examiner (document reviewer), an addresser, and a charge account clerk.  (AR 284-285).  Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 284-287).

///

1

**ISSUES**

2      Plaintiff contends that the Commissioner erred as a matter of

3  law.  Specifically, she argues that:

4      1.   The ALJ improperly relied on the testimony of the

5  medical expert, Dr. Craig, over the opinions of Plaintiff's

6  treating physician, Dr. Hartman, to erroneously conclude that

7  Plaintiff had the RFC to perform light exertion level work; and

8      2.   The ALJ erroneously determined that Plaintiff was not

9  credible.

10      This Court must uphold the Commissioner's determination that

11  Plaintiff is not disabled if the Commissioner applied the proper

12  legal standards and there is substantial evidence in the record as

13  a whole to support the decision.

14                          **DISCUSSION**

15  **A.   RFC Assessment**

16      Plaintiff contends that the ALJ erred by finding that

17  Plaintiff retained the RFC for a range of light exertional work

18  activities.  (Ct. Rec. 17, pp. 14-18).  Plaintiff specifically

19  asserts that the ALJ failed to provide specific and legitimate

20  reasons for rejecting the medical opinions of treating physician

21  Jeffrey Hartman, M.D., and incorrectly relied upon the testimony

22  of the medical expert, Dr. Craig.  (Ct. Rec. 17, pp. 14-18).

23  Plaintiff argues that the ALJ should have credited Dr. Hartman's

24  opinion that Plaintiff would have problems with her right arm due

25  to her right axillary abscess.  (Ct. Rec. 17, p. 17).  The

26  Commissioner responds that the ALJ properly evaluated the medical

27  evidence of record.  (Ct. Rec. 20, pp. 5-7).

28  ///

   ///

1   The courts distinguish among the opinions of three types of
2   physicians:  treating physicians, physicians who examine but do
3   not treat the claimant (examining physicians) and those who
4   neither examine nor treat the claimant (nonexamining physicians).
5   *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996).  A treating
6   physician's opinion is given special weight because of his
7   familiarity with the claimant and her physical condition.  *Fair v.*
8   *Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is
9   given to a treating physician than an examining physician.
10  *Lester*, 81 F.3d at 830.  However, the treating physician's opinion
11  is not "necessarily conclusive as to either a physical condition
12  or the ultimate issue of disability."  *Magallanes v. Bowen,* 881
13  F.2d 7474, 751 (9th Cir. 1989) (citations omitted).
14      The Ninth Circuit has held that "[t]he opinion of a
15  nonexamining physician cannot by itself constitute substantial
16  evidence that justifies the rejection of the opinion of either an
17  examining physician or a treating physician."  *Lester*, 81 F.3d at
18  830.  Rather, an ALJ's decision to reject the opinion of a
19  treating or examining physician, may be *based in part* on the
20  testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d
21  at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).
22  The ALJ must also have other evidence to support the decision such
23  as laboratory test results, contrary reports from examining
24  physicians, and testimony from the claimant that was inconsistent
25  with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52;
26  *Andrews*, 53 F.3d 1042-43.  Moreover, an ALJ may reject the
27  testimony of an examining, but nontreating physician, in favor of
28  a nonexamining, nontreating physician only when he gives specific,
    legitimate reasons for doing so, and those reasons are supported

by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Consistent with the findings of the medical expert, Dr. Craig (AR 31-33), the ALJ determined that Plaintiff retained the RFC to perform light exertion work, but that she could only occasionally squat, kneel and climb stairs and never climb ladders, ropes or scaffolds, should avoid hazardous machinery, needs regular work hours and requires regular meal breaks.  (AR 282-283).

The ALJ's RFC finding is consistent with not only the medical expert's opinion, but also with the opinions of state agency reviewing physicians of record.  On June 24, 1997, Drs. Wolfe and Fuller reviewed the record and concluded that Plaintiff had no established exertional limitations during the relevant time period.  (AR 203-210).  They noted excellent control of Plaintiff's diabetes over a 10 year period, found no evidence of early diabetic changes and found Plaintiff unimpaired other than the preclusion of climbing activity and the need to avoid hazards such as machinery and heights.  (AR 204-205, 207).

During the relevant time period, Plaintiff's treating physician, Dr. Hartman, treated Plaintiff for Diabetes Mellitus Type I, hypothyroidism-clinically euthyroid, hidradenitis-suppurativa, neuropathy, retinopathy, obesity, probable chondromalacia patellae, tobacco abuse and TMJ.  (AR 162-170, 213-218).  On October 6, 1994, Dr. Hartman opined that Plaintiff would be capable of performing light exertion work, but that her infected axillary node or gland would limit her ability to use her right arm.  (AR 164-165).  However, Dr. Hartman indicated that the infected axillary node or gland would only keep Plaintiff from performing at least half-time work in a normal day-to-day work

- 12 -

setting for 12 to 26 weeks[3] and that treatment would likely restore her ability to perform work. (AR 165). At the administrative hearing, Plaintiff testified that, in fact, when the growths were removed from her underarms, her activities were not affected and she eventually outgrew the problem. (AR 538-539). She also stated that, outside of the relevant time period, she was able to maintain work as a bookkeeper even though she was experiencing the underarm growth problem. (AR 539, 541).

Dr. Hartman continued to treat Plaintiff from November 10, 1999, to September 14, 2001 (AR 395-399) and from August 14, 2002, through January 9, 2004 (AR 498-505). On January 9, 2004, Dr. Hartman wrote a letter indicating that Plaintiff did not meet the disability requirements for diabetes, solely, but, based on Dr. Frank Rosekrans' psychological evaluation, he did not believe that Plaintiff could work successfully because of her multiple psychosocial problems. (AR 505). Dr. Hartman, however, made no vocational reference with regard to Plaintiff's previous right underarm infection on this occasion. (AR 505).

Dr. Rosekrans completed psychological evaluations of Plaintiff on August 5, 2002 (AR 428-430), and on December 2, 2002 (AR 475-478). While Dr. Rosekrans diagnosed Plaintiff with a major depressive disorder, a dependent personality disorder and psychosocial and environmental problems and gave Plaintiff a Global Assessment of Functioning ("GAF") score of 45[4] on each

---

[3]Dr. Hartman thus concluded that Plaintiff's limitations would not meet the duration requirements of the Act (one year), instead finding that they were only expected to last a maximum of 26 weeks. 42 U.S.C. § 1382c(a)(3)(A).

[4]A GAF of 50-41 reflects serious symptoms or serious impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

occasion (AR 430, 477), these evaluations took place well after the close of the date Plaintiff stipulated to in her requested closed period of disability.  Moreover, as noted by the ALJ, at the first evaluation, Plaintiff reported she had never had problems with drugs or alcohol and, on most days, was able to carry out all activities of daily living, care for herself and her children, cook and clean the house, and do the shopping.  (AR 278-279, 428-429).  Dr. Rosekrans noted that Plaintiff reported to having completed computer school and to having done very well. (AR 279, 428).  The mental status examination and Trails A and B were within normal limits.  (AR 279, 429).  The ALJ noted that, at the later evaluation, Plaintiff reported to using marijuana regularly at age 18 and indicated that she wanted to stay home and take care of her children.  (AR 279, 475-476).  It was noted that Plaintiff continued to be capable of caring for her personal needs and that she continued to be able to cook, clean and take care of herself and her children.  (AR 279, 477).  It was also noted that her mental status examination was again normal.  (AR 279, 477).

All medical sources of record reporting during the period at issue, including Dr. Hartman, found that Plaintiff was no more limited than the ALJ determined in this case (light exertional activity).  Dr. Hartman opined on October 6, 1994, that Plaintiff would be capable of performing light exertion work, but that her infected axillary node or gland would limit her ability to use her right arm.  (AR 164-165).  Dr. Hartman believed that the right arm infection would not restrict Plaintiff's ability to work for longer than 26 weeks (AR 165) and, in fact, Plaintiff testified that she was even able to perform full time work with the ailment (AR 539).  Plaintiff's underarm infection did not meet the

duration requirements of the Act (42 U.S.C. § 1382c(a)(3)(A)), and, as indicated by Plaintiff, did not remain as an enduring impairment (AR 539).  Although Dr. Hartman wrote on January 9, 2004, that he did not believe that Plaintiff could work successfully given her multiple psychosocial problems (AR 505), this conclusion was based on a questionable mental status evaluation that was performed well after the expiration of the relevant time period in this case.  In addition, Dr. Hartman's 2004 letter expressed an opinion that is also well outside of the relevant time period and, significantly, failed to mention Plaintiff's previous underarm infections as vocationally relevant. (AR 505).

Based on the foregoing, the undersigned finds that it was not necessary for the ALJ to provide rationale to discount Dr. Hartman's opinions because Dr. Hartman's findings are in accord with the ALJ's RFC finding, and the substantial weight of the record evidence supports the ALJ's RFC determination.  The evidence of record supports the ALJ's conclusion that Plaintiff was capable of performing light exertion work, with the additional limitations noted by the ALJ, during the relevant time period. (AR 282-283).  Therefore, there is no error with regard to the ALJ's RFC determination in this case.

**B.  Credibility**

Plaintiff also argues that the ALJ erroneously determined that Plaintiff was not credible.  (Ct. Rec. 17, pp. 18-19).  The Commissioner responds that the ALJ appropriately provided clear and convincing reasons to discredit Plaintiff.  (Ct. Rec. 20, pp. 8-9).

///

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ considered the evidence and testimony and determined that Plaintiff was not credible.  (AR 282).  In support of her finding in the regard, the ALJ indicated, throughout her decision, several reasons for discrediting Plaintiff's allegations.

The ALJ noted that medical records revealed that Plaintiff frequently missed doses of insulin, had very poor control over her condition, missed meals and was not taking insulin.  (AR 277).  The ALJ indicated that her diabetic condition had recently deteriorated, but that this was due to "missed meals and not taking insulin."  (AR 281).  The ALJ further noted that Plaintiff testified that she has never followed diabetic nutrition requirements because she is "stubborn."  (AR 281).  Noncompliance with medical care or unexplained or inadequately explained reasons

- 16 -

for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The fact that Plaintiff failed to comply with the medical treatment prescribed by her physicians; namely, following the diabetic nutrition requirements and regularly taking insulin, discounts her claim of disabling limitations.

With regard to her daily activities, it is well-established that the nature of daily activities may be considered when evaluating credibility.  *Fair*, 885 F.2d at 603.  The ALJ indicated that Dr. Rosekrans' two reports revealed that Plaintiff was able to carry out all activities of daily living, care for herself and her children, cook and clean the house, and do the shopping.  (AR 278-279, 281, 428-429, 477).  The ALJ also noted that Plaintiff attended computer training classes six hours a day and received good grades.  (AR 280-281).  Attending school is an activity which is inconsistent with an alleged inability to perform work. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Plaintiff's reported ability to essentially perform all activities of daily living and to attend and do well at school also provide rationale for finding her not credible.

Inconsistencies in a disability claimant's testimony also support a decision by an ALJ that a claimant lacks credibility with respect to her claim of disabling pain.  *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).  The ALJ noted that while Plaintiff testified to visual disturbance and related that she had diabetic retinopathy, an examination by a specialist in this field revealed "no evidence of early diabetic changes."  (AR 280).  The ALJ also indicated that Plaintiff testified that she did not drive

because of blurred vision; however, she related to Dr. Rosekrans
that she did not drive because her driver's license had been lost.
(AR 281).  The ALJ also noted that Plaintiff's testimony of
frequent severe insulin reactions was inconsistent with
questionnaires she completed stating that she experienced mild
insulin reactions as well as her statements to Dr. Hartman that
she only had rare mild reactions.  (AR 281).  The ALJ indicated
that Plaintiff's statements within the record regarding her drug
use had also been inconsistent.  (AR 281).  As noted by the ALJ,
Plaintiff reported to Dr. Rosekrans in August of 2002 that she
never had a drug problem; however, she failed to advise him that,
in April of 2002, she had been hospitalized for an overdose and
laboratory testing revealed that she tested positive for
marijuana, methamphetamines and phyencyclidines.  (AR 281).
Additionally, when re-evaluated by Dr. Rosekrans, she again failed
to advise him of that hospitalization and, although she did allude
to drug use when she was young, the reporting was inconsistent
with her testimony that she used drugs from 1990 through 1994 and
again in 2000.  These numerous inconsistences support the ALJ's
decision to discredit Plaintiff.

The undersigned also finds Plaintiff's statements to Dr.
Rosekrans concerning her desire to stay at home and take care of
her children, as opposed to working outside of the home,
significant as to Plaintiff's credibility.  (AR 279, 475-476).
Also significant is that fact that Plaintiff admitted at the
administrative hearing that she lied to her doctor about her
symptoms in order to prevent possibly having her driver's license
taken away.  (AR 556).

///

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). After reviewing the record, the undersigned judicial officer finds that the ALJ provided specific, clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff not credible. Accordingly, the undersigned finds that the ALJ did not err by concluding that Plaintiff was not credible and that her statements concerning her pain, her symptoms and her limitations were not persuasive. (AR 282).

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Based on the foregoing, the undersigned finds that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) is **DENIED**.

///

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 19**) is **GRANTED**.

3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

**DATED** this ___25th___ day of July, 2006.


                              s/Michael W. Leavitt
                           MICHAEL W. LEAVITT
                     UNITED STATES MAGISTRATE JUDGE